IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

LUCAS A. CANNY,                :
                                             :
           Plaintiff,             :       CIVIL NO.  4-03-CV-20185
                                             :
       vs.                         :
                                             :
DR. PEPPER/SEVEN UP BOTTLING,    :     **ORDER**
GROUP, INC.,                    :
                                             :
          Defendant.        :

This matter comes before the Court on the following resisted post-trial motions:  Defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, for New Trial or Remittitur (Clerk's No. 54); Plaintiff's Motion for Front Pay or Other Equitable Relief (Clerk's No. 49); and Plaintiff's Motion for Attorneys Fees and Expenses (Clerk's No. 51).

## PROCEDURAL HISTORY

This case was filed April 3, 2003.  Plaintiff alleged disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (1995 & Supp. 2002), and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, when he was terminated from his job, following a diagnosis that he was legally blind.  On July 21, 2004, the Court denied Defendant's Motion for Summary Judgment on the claim that Defendant discriminated against Canny by not making reasonable accommodations to his visual limitations.  The Court held that, although Canny had not generated a genuine issue of material fact regarding whether a reasonable accommodation was possible to keep him in his route-supervisor job, he had generated genuine issues of material fact concerning whether a reasonable accommodation was possible through reassignment to a vacant job other than the route-supervisor job.  The focus of the case at trial was on the accommodation process, not whether Plaintiff was disabled.

This case was tried to a jury, which returned a verdict on September 15, 2004, finding that Defendant failed to make a good faith effort to reasonably accommodate Plaintiff's disability.  The jury awarded $73,910 in actual damages ($53,910 for past lost earnings, plus $20,000 for past emotional distress) and $100,000 in punitive damages.

Post-trial motions and requests for fees and expenses were timely filed.

## FACTS

Canny, who is 27 years old, began working in October 1998 for Mid-Continent Bottlers, Inc., in Ottumwa, Iowa, as a route driver.  In this job, Canny drove a semi-truck and operated a forklift or other motorized pallet-jacks.  He signed a copy of the company policy requiring that to hold a job at the company, an employee must maintain a valid driver's license, void of any restrictions.

Dr. Pepper/Seven Up Bottling Group, Inc., acquired the Mid-Continent Bottlers facility in Ottumwa, and Canny continued working for the sales facility.  Dr. Pepper also opened in Ottumwa a production facility and warehouse, where more than 200 employees worked.  The company promoted Canny to account manager.  In this position, Canny drove to various customers' locations, took orders, and assisted with merchandising.  He traveled approximately 500 miles per week, covering a territory in southeast Iowa and part of Missouri.

In December 2000, Canny voluntarily left Dr. Pepper to take a job with another company.  Dr. Pepper rehired Canny in April 2001 as a route driver in its Ottumwa sales facility.  By June 2001, the company had promoted Canny to his previous position of account manager.

In the fall of 2001, Dr. Pepper promoted Canny to the job of route supervisor.  He supervised five route delivery drivers, three pre-sale account managers and four warehouse loaders.  He reported directly to Doug Canny (no relation), the branch manager of the sales facility.  Canny's route-supervisor job included driving routes when drivers were off work due to vacation or sick days.  The position required a commercial driver's license.

On March 5, 2002, Canny told Doug Canny that Christopher Haupert, M.D., a retinal specialist, had diagnosed him as being legally blind from the disease Stargardt's maculopathy OU, and

had advised Canny that he did not qualify for a driver's license.  The doctor determined that Canny's visual acuity in both eyes was 20/200.  Canny told his supervisor he would not be able to drive a motor vehicle as part of his job.   Canny's vision loss is neither treatable, nor correctable with glasses.  He has peripheral vision, but cannot see directly in front of him.  He can read text in print or on a computer, and uses a magnifier for fine print.

Canny testified that he met with Doug Canny and Dr. Pepper's Regional Human Resources Manager, Brenda Dixon, to discuss his job and limitations.  Plaintiff's first suggested that the company allow him to keep his route supervisor position, ride along with an account manager, and service customers according to the account manager's schedule.  Canny, however, would not be able to fill in for any truck drivers who were ill or on vacation, which had been one of his job requirements. Alternatively, Canny maintained that he could safely and effectively operate a forklift and could work as a warehouse loader in any of Defendant's facilities.  Canny, who was single at the time, told both Dixon and Doug Canny that he was willing to transfer to any other Dr. Pepper location in the country, and accept any position in manufacturing, sales, warehouse or management so that he could stay in Defendant's employment and keep his benefits.

Defendant has 3,500 employees in the Midwest Division.  In addition to Ottumwa, Dixon supervised the staffing and benefits administration of Defendant's operations Des Moines, Kansas City, Omaha, St. Louis and St. Paul, a portion of the Midwest Division where approximately 1,100 employees worked.  The majority of Defendant's product bottled for warehouses in this part of the Midwest Division comes from the Ottumwa facility.  Defendant also has divisions that serve areas including Dallas and Los Angeles.  The Defendant's organization was starting to downsize, or reduce the rate of expansion, by early 2002.

Dixon told Canny that he could not safely perform any jobs at the Ottumwa facility – all the positions required operating high-speed bottling equipment, which fills over 1,100 cans per minute, steering forklifts in a high-traffic warehouse, driving a semi-truck, or operating motorized lifts at customers' facilities, all of which Dixon felt required better vision than Plaintiff had.  Neither Dixon nor any other Dr. Pepper manager ever advised Canny of any job vacancies anywhere in the Defendant's

operations in the Midwest Division or any other divisions until July 2004, when Dr. Pepper offered Canny a merchandising position in Des Moines.

Dixon placed Canny on medical leave effective March 12, 2004. Dixon told Doug Canny to discontinue discussions with Plaintiff regarding accommodations, and that Dixon or her supervisors would make all decisions regarding accommodations.

Although Defendant regularly offered instruction in forklift operation and tested the operators to comply with government safety requirements, the company offered no such instruction and testing to Canny after his diagnosis of 20/200 vision.

In July 2002, after Canny requested assistance from the Iowa Department for the Blind, Brenda Criswell, a rehabilitation counselor for the Department, sought to communicate with Dixon to explore options for accommodating Canny's disability, for rehabilitative training, or for support services for Canny. Criswell contacted Dixon, but could not obtain an appointment. Dixon did not accept any services from the Iowa Department for the Blind, because she had determined that there were no positions in Dr. Pepper's Ottumwa facilities for someone with Canny's disability.

On March 12, 2002, Canny applied for disability benefits. Canny received short-term disability payments from March to October 2002, which was an insurance benefit for which Defendant had paid. He then received long-term disability payments from October 2002 to August 2003, under a policy for which he had paid a portion of the premium, and Defendant had paid the balance. He also received Social Security Disability benefits.

It was not until the summer of 2002, after Canny filed a charge with the Iowa Civil Rights Commission, that Dixon reviewed all the open positions the company had filled in its Iowa warehouses from March 5 to July 4, 2002. She determined that all the jobs filled required operation of a delivery truck, passenger vehicle, or forklift. She later considered Canny's qualifications to work in a telephone sales job. However, Dr. Pepper had no telephone sales jobs in Ottumwa or anywhere in Iowa during the next six months. Dixon did not search for job openings within a wider geographic area within Defendant's organization.

Canny obtained a part-time job with Schwartz Beer Wholesalers, Inc., in Ottumwa from June

to October 2002.  At Schwartz, Canny operated a forklift in a smaller, less busy warehouse than Defendant had in Ottumwa.  Canny next worked as a full-time warehouse loader for Mahaska Bottling Company in Ottumwa, from March to November 2003, when he was laid off after the busy season. Since May 2004, Canny has worked two days a week in Ottumwa as a warehouse loader for Schwartz, where he earns $80 per day.  He operates a forklift to load trucks and helps to unload the trucks at customers' stores.  In addition to working for Schwartz, Canny stays with his child while his wife attends classes or works.

On July 30, 2004, Dr. Pepper offered Canny a job as a full-time merchandiser in its Des Moines branch; the offer expired August 6, 2004.  However, this offer was conditioned on the requirements that Canny relocate to Des Moines, pay for his own private transportation, or, if he used public transportation, that he forego payment for any time he spent waiting for a bus, if that caused him to work more than eight hours per day.  Canny is no longer single, and he is not as flexible about his ability to transfer as he was in 2002, due to his family circumstances.  For these reasons, Canny declined the job offer.

Canny requested that the jury award him back pay in the amount of $53,190, which was based upon an estimate of lost salary ($62,400) plus health benefits ($13,500) as a full-time employee working for Defendant as a warehouse loader at $12 an hour from March 2002 to September 2004, with an offset for short-term disability payments ($7,200) and salary from other employers ($4,000 from Schwartz and $10,790 from Mahaska).

## DISCUSSION

### I.  Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur (Clerk's No. 54)

A.  <u>Motion for Judgment as a Matter of Law</u>

Dr. Pepper renewed its Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b), which the company made at the close of Canny's case and at the close of all the evidence at trial.  Dr. Pepper asserts the evidence was insufficient to support submission of Canny's

claim for disability discrimination to the jury.  Dr. Pepper further argues that even if Canny established his claim of disability discrimination, the evidence was insufficient to support submitting to the jury Canny's claim for punitive damages.

   1.   Sufficiency of Evidence to Support Disability Discrimination Claim

Canny contends that the trial record contains sufficient evidence to support the jury's finding of liability and damages on his discrimination claim.

A court may grant a motion for judgment as a matter of law "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party."  Fed.R.Civ.P. 50(a)(1).  When reviewing the sufficiency of the evidence, a court must view the evidence in the light most favorable to the prevailing party, assuming as proven all facts that the nonmoving party's evidence tended to show, giving the nonmoving party the benefit of all reasonable inferences, and assuming that all conflicts in the evidence were resolved in his or her favor. *Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 833 (8th Cir. 2001); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1049-50 (8th Cir.) (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997)), *cert. denied*, 531 U.S. 979 (2000); *accord MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 927, 931 (8th Cir. 2004); *Ferguson v. United States*, 343 F. Supp. 2d 787, 799 (S.D. Iowa 2004).  Applying this standard, a court must grant the motion when the nonmovant's case rests only on speculation and conjecture lacking probative evidentiary support. *Concord Boat*, 207 F.3d at 1050.  Unless "there is a complete absence of probative facts to support the verdict," however, a court will not set aside a jury verdict.  *MacGregor*, 373 F.3d at 927 (quoting *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 634 (8th Cir. 1998)).

The ADA states that an employer may not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a).  A "qualified" individual includes one " 'with a disability who, *with* or without *reasonable accommodation*, can perform the essential functions of' " the relevant position. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002) (quoting § 12111(8)).  Under the ICRA, claims for disability discrimination are analyzed in accord with federal standards, including the ADA and regulations implementing the statute.  *Brunko v. Mercy Hosp.*, 260 F.3d 939, 941 (8th Cir. 2001)

(citing *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997)); *Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 59-60 (Iowa 1999); *Fuller v. Iowa Dep't of Human Servs.*, 576 N.W.2d 324, 329 (Iowa 1998).

The evidence, when viewed in the light most favorable to Plaintiff, was sufficient to allow a jury to infer that with or without reasonable accommodation, he could operate a forklift and work in a warehouse, as a merchandiser, or in an office position within Defendant's organization.  Defendants' Motion for Judgment As a Matter of Law is denied.

    2.  Punitive Damages Claim

        a.  Sufficiency of Evidence to Support Punitive Damages Claim

Defendant asserts that no evidence shows that Dr. Pepper acted in a manner that was malicious or recklessly indifferent to Plaintiff's federally protected rights, and therefore it is entitled to judgment as a matter of law on the claim for punitive damages.  *See* 42 U.S.C. § 12101; *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 529 (1999); *MacGregor*, 373 F.3d at 931.  The Court reviews the evidence in the light most favorable to Canny.

The jury heard evidence that Plaintiff's direct supervisor, Doug Canny, believed that Plaintiff could operate a forklift safely, and that, at a minimum, more investigation or discussion was needed to verify the extent of Plaintiff's limitations as they related to Defendant's facilities in Ottumwa or elsewhere.  Dixon conducted no interactive dialog with Plaintiff (or the Iowa Department for the Blind); she based her decision on her subjective perceptions of Plaintiff's limitations as of March 2002.

The jury found that Defendant did not establish that it "made a good faith effort and consulted with the plaintiff to identify and make a reasonable accommodation."  *Canny v. Dr. Pepper/Seven Up Bottling Group, Inc.,* No. 4-03-CV-20185 (S.D. Iowa, Verdict Form, filed September 15, 2004).

Viewing the evidence in the light most favorable to Plaintiff, the jury could reasonably have found that Defendant simply made no effort to accommodate Plaintiff or explore the extent of his limitations.  There was no interactive process between Plaintiff and Defendant once he announced his disability.  Defendant was aware of its obligation to make a good faith effort to identify and make reasonable accommodations, and it chose not to do so.

There was sufficient evidence to support a finding that Defendant acted in a way that was malicious or recklessly indifferent to Plaintiff's federally protected right not to be discriminated against. Defendant's Motion for Judgment as a Matter of Law on this issue is denied.

### b.  Amount of Punitive Damages

To ensure that a punitive damages award is based on an "application of law, rather than a decisionmaker's caprice," a court reviewing such an award should consider three guideposts:  (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the punitive damages award and the plaintiff's actual harm or potential harm; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (enumerating guideposts set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)); *MacGregor*, 373 F.3d at 932. In determining the reprehensibility of a defendant's conduct – the "most important indicium" of the reasonableness of a punitive damages award – a court should evaluate "whether:  the harm caused was physical as opposed to economic; the tortuous conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."  *State Farm*, 538 U.S. at 419; *MacGregor*, 373 F.3d at 932.  Punitive damages should be awarded only if the defendant's culpability was so reprehensible as to warrant the imposition of further sanctions – beyond payment of compensatory damages – to achieve punishment or deterrence.  *State Farm*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 575).

Here, viewing the evidence of the reprehensibility of Defendant's conduct in the light most favorable to Plaintiff, the Court finds the evidence was sufficient to support the jury's verdict.  A jury could conclude that Plaintiff had financial vulnerability, the misconduct was not an isolated incident, and the harm done was the result of intentional malice, rather than a mere accident.  Given the company's actions, a jury could determine that punitive damages were necessary to prevent such discrimination from occurring in the future.

Turning to the second *Gore* guidepost, the Court finds that the punitive damages were

8

constitutionally proportional to Plaintiff's actual harm. The basis for comparison, including economic and compensatory damages, is $73,910, which consists of $53,910 for back pay and benefits and $20,000 for past emotional distress. *See MacGregor*, 373 F.3d at 933. The ratio of punitive damages to actual harm is approximately 1.35-to-1. The Court recognizes that the relationship between punitive damages and actual harm should not be reduced to a simple mathematical comparison, and a punitive damages award must be based on the facts and circumstances of the defendant's misconduct and the harm to the plaintiff. *State Farm*, 538 U.S. at 425. In this case, the facts and circumstances of Defendant's misconduct and the harm to Plaintiff support the punitive damages award. Furthermore, prior decisions support a finding that the ratio of 1.35-to-1 is not excessive. *See, e.g., MacGregor*, 373 F.3d at 933 (holding that punitive damages ratio of 2-to-1 was not excessive); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049 (8th Cir. 2002) (further reducing punitive damages to 10-1 ratio, after district court had reduced award to 20-1 ratio); *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 577-78 (8th Cir. 1997) (reducing punitive damages from approximately 140-1 to 10-1 ratio); *Kimbrough v. Loma Linda Dev., Inc.*, 183 F.3d 782, 785 (8th Cir. 1999) (affirming punitive damages of 10-1 ratio).

B. <u>Motion for New Trial or Remittitur</u>

Alternatively, Dr. Pepper moves for a new trial under Federal Rule of Civil Procedure 59, or for a remittitur.

A court should grant a motion for a new trial only if the jury's verdict was "against the great weight of the evidence so as to constitute a miscarriage of justice." *Mathieu v. Gopher News Co.*, 273 F.3d 769, 784-85 (8th Cir. 2001) (quoting *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 497 (8th Cir. 1998), *cert. denied,* 526 U.S. 1115 (1999)).

Whether to grant a remittitur "is a procedural matter governed by federal, rather than state, law." *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 834 (8th Cir. 2004) (quoting *Schaefer v. Spider Staging Corp.*, 275 F.3d 735, 738 (8th Cir. 2002) (quotation omitted)). A district court should order remittitur "only when the verdict is so grossly excessive as to shock" the court's conscience. *Eich v. Board of Regents for Cent. Missouri State Univ.*, 350 F.3d 752, 763 (8th Cir.

2003) (quoting *Ouachita Nat'l Bank v. Tosco Corp.*, 716 F.2d 485, 488 (8th Cir. 1983)).  A court does not consider a verdict excessive unless it finds that "plain injustice" or a "monstrous" or "shocking" result has occurred.  *Id.* (citing *Jenkins v. McLean Hotels, Inc.*, 859 F.2d 598, 600 (8th Cir. 1988)).

     1.  New Trial

Dr. Pepper contends it is entitled to a new trial because the Court erroneously admitted evidence that on July 30, 2004, the company offered Canny a job as a full-time merchandiser in its Des Moines branch, and because the Court erred in instructing the jury.

     a.  Erroneous Admission of Evidence of Job Offer

Dr. Pepper asserts the Court should direct a new trial excluding evidence of the July 2004 employment offer.  To make the offer, Dr. Pepper had to waive the requirement of a driver's license and driving for the merchandiser job.  The company asserts it waived the driving requirement for Canny and offered him the job to cut off future damages in the Court's determination of front pay.

Dr. Pepper offered evidence showing that driving is an essential function of the merchandiser job.  The ADA does not require an employer to waive an essential job function as a reasonable accommodation.  *Heaser v. Toro Co.,* 247 F.3d 826, 831 (8th Cir. 2001).  Dr. Pepper argues that admission of the July 2004 job offer prejudiced the company by allowing the jury to infer that Dr. Pepper should have waived the driving requirement earlier, although the ADA did not require the waiver.

The Court again finds, as it did at trial, that the testimony regarding Defendant's job offer to Canny in July 2004 was an admission by Defendant, and thus admissible pursuant to Federal Rule of Civil Procedure 801(d)(2); any prejudice was outweighed by the testimony's probative value.  Defendant's Motion for New Trial based upon this evidentiary ruling is denied.

     b.  Errors in Jury Instructions

Defendant next argues that the Court should grant its motion for a new trial, because the Court erred in three of its instructions to the jury.

Jury instructions must, when taken as a whole, "fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Campos v. City of*

*Blue Springs, Mo.*, 289 F.3d 546, 551-52 (8th Cir. 2002) (quoting *Ford v. GACS, Inc.*, 265 F.3d 670, 679 (8th Cir. 2001), *cert. denied*, 535 U.S. 954 (2002)).

First, Defendant challenges Instruction 11, which was based upon Eighth Circuit Instruction 5.58. Instruction 11 advised the jury that they should not return a verdict for Plaintiff merely if they felt the Defendant's decision was harsh. Defendant requested that the instruction also include "or unreasonable" following "harsh."

Second, Defendant requested that Instruction 12 include language that Plaintiff was substantially limited in the major life activity of seeing.

Third, Defendant requested a modification to Instruction 14, on reasonable accommodations, to narrow its focus only to the accommodation sought by Plaintiff, rather than a general description of what might be reasonable accommodations for a disabled worker.

Viewing the instructions as a whole, including Preliminary Instruction No. 2, Statement of the Case, which specifically advised the jury that Plaintiff's vision impairment constituted a disability, and all of the instructions relating to the ADA and the employer's obligation to make a good faith effort to consult with Plaintiff to identify and make a reasonable accommodation, the Court finds that the case was fairly and adequately submitted to the jury. Defendant's Motion for a New Trial based upon challenges to the jury instructions as given is denied.

### 2. Remittitur of the Back Pay Award

Defendant moves the Court to remit the back-pay damage award if the Court does not grant a new trial. Specifically, Defendant seeks remittur from the jury's award of $53,910 to no more than $26,430. To support its request, Defendant first argues that Plaintiff did not meet his duty to mitigate his damages by making a sufficient effort to seek full-time employment in 2002 and in 2003 after his job with Mahaska Bottling Company ended in 2003. Dr. Pepper contends that Canny failed to mitigate his front-pay damages when he declined to accept the company's July 30 to August 6, 2004, offer of reinstatement as a full-time merchandiser in its Des Moines branch.

Specifically, Defendant argues that the award of back pay is excessive, and should be remitted by $27,480 for the following reasons.

11

1.     Defendant's first opening as a warehouse loader did not occur in Iowa until May 2, 2002, and thus Plaintiff should not be entitled to pay for the period from March 12 to May 2, 2002.  This remittur would be $3,330 for wages.

2.     Plaintiff's back pay award should be reduced by $4,950 for his claim for health insurance as a full-time employee, because Plaintiff did not seek full-time employment from November 2003 to September 2004, after he was laid off from Mahaska Bottling Company.

3.     Plaintiff's back pay award should be reduced by $13,440 for 28 weeks at $480 per week for the time between November 2003 and May 2004, when he did not seek full-time employment.

4.     Because Plaintiff has worked only two days per week from May 2004 to the present, his back pay award should be reduced by $5,760; Plaintiff should only recover the pay differential between a warehouse loader for Defendant working two days a week and that of his present warehouse position for Schwartz Beer Wholesalers working two days per week.

A party harmed by a discriminatory employment decision has an affirmative duty to mitigate his damages by reasonably seeking and accepting other suitable employment.  *Mathieu*, 273 F.3d at 783. Finding suitable employment does not require entering another line of work, accepting a demotion, or taking a demeaning job.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982); *Mathieu*, 273 F.3d at 784.  A plaintiff has the burden to act with reasonable diligence to seek out or not refuse a job that is substantially equivalent to the one at issue.  *Mathieu*, 273 F.3d at 784; *Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 735 (8th Cir. 1996).  A plaintiff's efforts to mitigate need not be successful but must represent an honest effort to find substantially equivalent work.  *Mathieu*, 273 F.3d at 784 (holding that magistrate judge did not commit a manifest abuse of discretion by finding that plaintiff made an honest effort and exercised reasonable diligence to mitigate his damages, when, for the first three months after his employment with the defendant ended, plaintiff devoted six to eight hours per week looking for work and applied with eight to ten employers) (citing *Brooks v. Woodline Motor Freight, Inc.*, 852

12

F.2d 1061, 1065 (8th Cir. 1988)).

The burden of proof was on Defendant to establish that Plaintiff failed to mitigate his damages. *See Hartley v. Dillard's, Inc.,* 310 F.3d 1054, 1061 (8th Cir. 2002); *Excel Corp. v. Bosley*, 165 F.3d 635, 639 (8th Cir. 1999) (citing *Di Salvo v. Chamber of Commerce*, 568 F.2d 593, 598 (8th Cir. 1978)); *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 618 (8th Cir. 2000) ("The defendant bears the burden of showing that there were suitable positions and that the plaintiff failed to use reasonable care in seeking them.") (quoting *Denesha*, 161 F.3d at 502).

When Plaintiff disclosed his vision limitation to Defendant in March 2002, Defendant placed him on leave, then on short-term disability, and finally on long-term disability, which ended in September 2003. Plaintiff worked part-time for Schwartz Beer Wholesalers as a warehouse loader from June to October 2002. He next worked for Mahaska Bottling Company as a warehouse loader from March to November 2003, and was then laid off. He expected to be recalled in early 2004, but was not. Schwartz then hired Plaintiff to work part-time as a warehouse loader and delivery helper, from May 2004 to the present.

Defendant did not disclose to Plaintiff any of the nine warehouse loader positions or other jobs it had available in its Iowa operations from March 2002 to July 2004. (*See* Def.'s Ex. G.) Defendant's first warehouse loader vacancy was filled on May 2, 2002. Defendant argues that the jury's award of back pay should be remitted, at least by the amount of damages claimed for the period between March 12 and May 2, 2002, because it did not fill this vacancy until then, assuming the jury found that Plaintiff could perform the functions of a warehouse loader. Defendant requests additional remittitures to adjust for the time that Plaintiff has not been employed on a full-time basis, which included his loss of health insurance as a part-time employee.

The jury could reasonably find that Defendant did not met its burden to establish that Plaintiff failed to seek out or take advantage of opportunities reasonably available to him. Plaintiff did seek full-time opportunities with Defendant, but he was rebuffed. Plaintiff found work in the Ottumwa area consistent with his abilities, experience, and the seasonal nature of warehouse loading for smaller bottling companies. The fact that he could not locate a full-time position with benefits does not mean

that he failed to take advantage of opportunities reasonably available to him.  The Court finds that the offer of employment that Dr. Pepper made to Plaintiff on July 30, 2004, was not an unconditional offer of reinstatement.  The offer was conditioned upon transportation issues, wage concessions and Plaintiff's relocation.  Defendant failed to engage Plaintiff in the discussion of accommodation for this position as required by the ADA.  The Court finds that in light of the nature and circumstances of this case, Plaintiff's decision to reject this offer was not unreasonable.  Defendant's request for remittur of back pay by $27,480 to adjust for health insurance, time off from full-time employment, and Plaintiff's present part-time employment is denied.

Defendant's Motion for New Trial or Remittitur is denied.[1]

## II.  Plaintiff's Motion for Award of Front Pay or Other Equitable Relief (Clerk's No. 49)

Plaintiff requests a front pay and benefits award of 30 months ($71,900), based on the jury's findings and the facts and circumstances of the case.  Front pay is an equitable remedy.  *Salitros v. Chrysler Corp.*, 306 F.3d 562, 571 (8th Cir. 2002); *see Pollard v. E.I. du Pont Nemours & Co.*, 532 U.S. 843, 854, n.3 (2001); *Excel Corp.*, 165 F.3d at 639.  Front pay is a disfavored remedy that may be awarded in lieu of reinstatement, when the circumstances make reinstatement impractical or impossible.  *Sellers v. Mineta*, 358 F.3d 1058, 1063 (8th Cir. 2004); *Mathieu*, 273 F.3d at 778.  In determining what equitable relief may be appropriate, a court may consider all the circumstances of the case, although it may not reject or contradict jury findings.  *Mathieu*, 273 F.3d at 778.

A.  Reinstatement

"Substantial hostility," beyond that normally incident to litigation, qualifies as a basis for denying reinstatement.  *Mathieu*, 273 F.3d at 778.  The relevant hostility should be such that a productive, amicable working relationship would be impossible.  *Id.* (quoting *Denesha*, 161 F.3d at 501); *see Sellers*, 358 F.3d at 1064.

In view of Dr. Pepper's failure to discuss with Canny any accommodation, and the hostile relationship between this employer and employee – as evidenced by the timing and limitations on the

---

[1]  To the extent that Defendant is moving for remittitur of the punitive damages award, the motion is denied for the reasons explained above.

job offer the company made to Canny on July 30, 2004, and the testimony at trial – the Court finds that reinstatement in any capacity is impractical or impossible.

      B.  <u>Front Pay</u>

In considering an award of front pay, a court may consider various factors, including age, education, and extensive experience in the relevant field, *Sellers*, 358 F.3d at 1066, and the "ability to obtain employment with comparable compensation and responsibility," *Ollie v. Titan Tire Corp.*, 336 F.3d 680, 687 (8th Cir. 2003); *Moysis v. DTG Datanet*, 278 F.3d 819, 829 (8th Cir. 2002) (8th Cir. 2002) (quoting *EEOC v. HBE Corp.*, 135 F.3d 543, 555 (8th Cir. 1998)).  A court may also take into account a plaintiff's post-termination conduct.  *Sellers,* 358 F.3d at 1064.  In determining whether front pay is appropriate, a court "must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall."  *Moysis*, 278 F.3d at 829 (quoting *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir. 1993)).

Under the facts and circumstances of this case, the Court finds that no award of front pay is appropriate.  Plaintiff has chosen to adapt his work schedule by remaining in a part-time job to suit the current childcare needs of his family and to accommodate the educational pursuits of his spouse.  Although his rejection of the July 30, 2004, conditional offer of full-time employment from Defendant was reasonable, Plaintiff has not met his burden of proof to establish by a preponderance of evidence that, at the present time, he does not have the ability to work full-time in a comparable job.  *Cf., Moysis,* 278 F.3d at 829.

## III.  Plaintiff's Motion for Award of Attorneys Fees and Expenses (Clerk's No. 51)

Pursuant to 42 U.S.C. § 12205 and the Iowa Civil Rights Act, Iowa Code §§ 216.15(8)(a)(8) and 216.16(5), attorneys fees and expenses may be awarded to a prevailing plaintiff.  Plaintiff claims fees totaling $34,380.00 (171.9 hours x $200) and expenses of $1,294.65.

Defendant does not challenge the hourly rate charged by Plaintiff's counsel, but does dispute that the full amount claimed should be awarded.  Defendant argues that because one of Plaintiff's two theories of recovery was eliminated when the Court ruled on the Motion for Summary Judgment, Plaintiff should only recover for work on the remaining theory.

The Court has reviewed Plaintiff's request for fees and expenses. The Court finds that Plaintiff's hourly rate of $200 is reasonable in light of his 22 years' experience as a litigator. Additionally, Plaintiff has demonstrated the efficient manner in which both trial preparation and trial were conducted (which could not have occurred without the professionalism and collegiality of defense counsel).

Although Plaintiff's Complaint originally presented two theories for recovery, the loss of one theory did not materially impact either pretrial activity or the witnesses and evidence required for trial. Overall, the verdict demonstrates Plaintiff's success, and the Court finds that the activities of Plaintiff's counsel were necessary to the presentation of either or both theories, so there should be no reduction to the fee award. The Court finds that both the amount of time and the specific tasks were reasonable and necessary for presentation of Plaintiff's case. Using the "lodestar" method, and multiplying the hours reasonably spent by a reasonably hourly rate, *see Warren v. Prejean,* 301 F.3d 893, 894 (8th Cir. 2002), the Court awards Plaintiff $34,380.00 in fees and $1,294.65 in costs and expenses. Judgment shall be entered accordingly.

## CONCLUSION

1. Defendant's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, for New Trial or Remittitur (Clerk's No. 54) is denied.

2. Plaintiff's Motion for Front Pay or Other Equitable Relief (Clerk's No. 49) is denied.

3. Plaintiff's Motion for Attorneys Fees and Expenses (Clerk's No. 51) is granted; the Clerk shall enter judgment in the amount of $34,380.00 in fees and $1,294.65 in costs and expenses.

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2005.

CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE

16